# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CFE RACING PRODUCTS, INC.,

             Plaintiff,                                Case Number 11-13744

v.                                              Honorable David M. Lawson

BMF WHEELS, INC. and BROCK
WELD,

             Defendants.

_____/

**JURY INSTRUCTIONS**

(1)     Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

(2)     I will start by explaining your duties and the general rules that apply in every civil case.

(3)     Then I will explain some rules that you must use in evaluating particular testimony and evidence.

(4)     Then I will explain the elements, or parts, of the claims brought by the plaintiffs.

(5)     And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

(6)     Please listen very carefully to everything I say.

I have given each of you a copy of these instructions for your use while deliberating. If you have questions about the law or your duties as jurors, you should consult the copy of the instructions as given to you.

(1)      You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

(2)      Your second duty is to take the law that I give you, apply it to the facts, and decide if the plaintiff has proved his case.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.   All the instructions are important, and you should consider them together as a whole.

(3)      The lawyers may talk about the law during their arguments.  But if what they say is different from what I say, you must follow what I say.  What I say about the law controls.

(4)      Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

This case should be considered and decided by you as a dispute between parties of equal standing in the community, of equal worth, and holding the same or similar stations in life.  All persons stand equal before the law and are to be treated as equals.

(1)     You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.  Likewise, sympathy must not influence your decision.  Nor should your decision be influenced by prejudice regarding race, sex, religion, national origin, age, handicap, or any other factor irrelevant to the rights of the parties.

(2)     The evidence in this case includes only what the witnesses said while they were testifying under oath; the exhibits that I allowed into evidence; and the stipulations that the lawyers agreed to.

(3)     Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  Their questions and objections are not evidence.  My legal rulings are not evidence.  And my comments and questions are not evidence.

(4)     However, an admission of fact by an attorney is binding on his client.

(5)     During the trial I did not let you hear the answers to some of the questions that the lawyers asked and see some of the exhibits that were offered in evidence.  You must completely ignore all of these things.  Do not even think about them.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

(6)     Make your decision based only on the evidence, as I have defined it here, and nothing else.

(1)     The parties have reached some stipulations that have eliminated the need to call certain witnesses to testify to certain facts.  The parties agree on the following facts:

(A)     On January 23, 2007, the United States Patent and Trademark Office registered the mark BMF, consisting of standard characters without claim to any particular font, style, size, or color, for cylinder heads at Reg. No. 3,202,013.

(B)     On March 18, 2008, the United States Patent and Trademark Office registered the mark BMF WHEELS, consisting of standard characters without claim to any particular font, style, size, or color, for land vehicle parts, namely wheels, at Reg. No. 3,400,041.

(C)     The defendants use their marks and logos in interstate commerce.

(2)     You may accept these stipulations as proof of the facts covered by the stipulations without the testimony from witnesses.

In determining whether any fact has been proved, you shall consider all of the evidence bearing on that fact without regard to which party produced the evidence.

(1)     Now, some of you may have heard the terms "direct evidence" and "circumstantial evidence."

(2)     Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact.  If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

(3)     Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

(4)     It is your job to decide how much weight to give the direct and circumstantial evidence.  The law makes no distinction between the weight that you should give to either one, or says that one is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

(1)    You are to consider only the evidence in the case.  However, you are not limited to the statements of the witnesses.  In other words, you are not limited to what you see and hear as the witnesses testify.  You may draw from the facts that you find have been proved such reasonable inferences as seem justified in light of your experience.

(2)    "Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case.

You have a right to consider all the evidence in the light of your own general knowledge and experience in the affairs of life, and to take into account whether any particular evidence seems reasonable and probable.   However, if you have personal knowledge of any particular fact in this case, such knowledge may not be used as evidence.

(1)     Another part of your job as jurors is to decide how credible or believable each witness was.  This is your job, not mine.  It is up to you to decide if a witness's testimony was believable, and how much weight you think it deserves.  You are free to believe everything that a witness said, or only part of it, or none of it at all.  But you should act reasonably and carefully in making these decisions.

(2)     Let me suggest some things for you to consider in evaluating each witness's testimony.

(A)     Ask yourself if the witness was able to clearly see or hear the events.  Sometimes even an honest witness may not have been able to see or hear what was happening, and may make a mistake.

(B)     Ask yourself how good the witness's memory seemed to be.  Did the witness seem able to accurately remember what happened?

(C)     Ask yourself if there was anything else that may have interfered with the witness's ability to perceive or remember the events.

(D)     Ask yourself how the witness acted while testifying.  Did the witness appear honest?  Or did the witness appear to be lying?

(E)     Ask yourself if the witness had any relationship to the plaintiffs or the defendant, or anything to gain or lose from the case, that might influence the witness's testimony.  Ask yourself if the witness had any bias, or prejudice, or reason for testifying that might cause the witness to lie or to slant the testimony in favor of one side or the other.

-11-

(F)     Ask yourself if the witness testified inconsistently while on the witness stand, or if the witness said or did something or failed to say or do something at any other time that is inconsistent with what the witness said while testifying.  If you believe that the witness was inconsistent, ask yourself if this makes the witness's testimony less believable. Sometimes it may; other times it may not.  Consider whether the inconsistency was about something important, or about some unimportant detail.  Ask yourself if it seemed like an innocent mistake, or if it seemed deliberate.

(G)     And ask yourself how believable the witness's testimony was in light of all the other evidence.  Was the witness's testimony supported or contradicted by other evidence that you found believable?  If you believe that a witness's testimony was contradicted by other evidence, remember that people sometimes forget things, and that even two honest people who witness the same event may not describe it exactly the same way.

(3)     These are only some of the things that you may consider in deciding how believable each witness was.  You may also consider other things that you think shed some light on the witness's believability.  Use your common sense and your everyday experience in dealing with other people.  And then decide what testimony you believe, and how much weight you think it deserves.

(1)     If you decide that a witness said something earlier that is not consistent with what the witness said in court, you may consider the earlier statement in deciding whether to believe the witness, but you may not consider it as proof of the facts in this case.

(2)     However, there are exceptions.  You may consider an earlier statement as proof of the facts in this case if:

(A)     the statement was made by the plaintiff, a defendant, or an agent or employee of either party; or

(B)     the statement was given under oath subject to the penalty of perjury at a deposition; or

(C)     the witness testified during the trial that the earlier statement was true.

(1)     Evidence has been presented to you in the form of written answers of one of the parties to written interrogatories submitted by the other side.  These answers were given in writing and under oath before this trial in response to written questions.

(2)     You must give the answers the same consideration as if the answers were made from the witness stand.

It has been brought out that an attorney has talked with a witness.  There is nothing wrong with an attorney talking with a witness for the purpose of learning what the witness knows about the case and what testimony the witness will give.

(1)     Although you may consider the number of witnesses testifying on one side or the other when you weigh the evidence as to a particular fact, the number of witnesses alone should not persuade you if the testimony of the lesser number of witnesses is more convincing.

(2)     The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial.  Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case.

(1)     There is one more general subject that I want to talk to you about before I begin explaining the elements of the plaintiff's claim.

(2)     The lawyers for both sides objected to some of the things that were said or done during the trial.  Do not hold that against either side.  The lawyers have a duty to object whenever they think that something is not permitted by the rules of evidence.  Those rules are designed to make sure that both sides receive a fair trial.

(3)     And do not interpret my rulings on their objections as any indication of how I think the case should be decided.  My rulings were based on the rules of evidence, not on how I feel about the case.  Remember that your decision must be based only on the evidence that you saw and heard here in court.

(1)     That concludes the part of my instructions explaining your duties, the general rules that apply in every civil case, and the rules that you must use in evaluating particular testimony and evidence.

(2)     I shall now give you the definition of some important legal terms.  Please listen carefully to these definitions so that you will understand the terms when they are used later.

(1)     When I say that a party has the "burden of proof," or if I use the expression "if you find" or "if you decide," I mean the evidence must satisfy you that the proposition on which that party has the burden of proof has been established by evidence which outweighs the evidence against it.

(2)     You must consider all the evidence regardless of which party produced it.

(3)     Similarly, to "establish by the preponderance of the evidence" means to prove that something is more likely so than it is not so. In other words, a preponderance of the evidence in the case means such evidence as, when considered and compared to that opposed to it, has more convincing force, and produces in your mind a belief that what is sought to be proved is more likely true than not true.

(4)     In determining whether any fact in issue has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

(1)     Plaintiff CFE Racing Products has two claims against defendants BMF Wheels and Brock Weld:  infringement of a federally registered trademark, that is, the mark "BMF"; and infringement of an unregistered trademark, that is, the BMF logo.

(2)     Defendants BMF Wheels and Brock Weld contend that they have not committed trademark infringement because their sale of products under the BMF Wheels mark does not create a likelihood of confusion with CFE Racing's products, and they had their own registered trademark.

(3)     The plaintiff has the burden of proof on all the elements of its respective claims, which I will explain to you in a moment.

(1)     For its first claim, the plaintiff contends that the defendants infringed its federally registered trademark.  Infringement of a registered trademark occurs when a person uses the mark or a phrase similar to it in a manner likely to cause confusion, mistake, or deception among ordinary buyers or prospective buyers as to the source of the product.  In order to prevail on this claim the plaintiff must prove the following elements by a preponderance of the evidence:

(A)     First, that "BMF" is a valid, protectable trademark;

(B)     Second, that the plaintiff owns "BMF" as a trademark; and

(C)     Third, that the defendants used "BMF" in a manner that is likely to cause confusion among ordinary purchasers as to the source of its products.

(2)     If you find that the plaintiff has proved each of these elements, your verdict should be for the plaintiff.  If, on the other hand, you find that the plaintiff has failed to prove any of these elements, your verdict should be for the defendant.

Concerning the first element, a trademark is a word, a name, a symbol, a device, or a combination of them that indicates the source of goods or services.  The owner of a trademark has the right to exclude others from using that trademark.

Concerning the second element, the plaintiff, CFE Racing Products, has submitted evidence that it is the owner of a trademark registration that it asserts the defendants have infringed.  That registrations concern the use of the letters "BMF" on cylinder heads, registered January 23, 2007 (Registration Number 3,202,013).  You must consider the trademark to be conclusively proved as valid and owned by the plaintiff.

You have heard evidence of the classification of trademark registrations issued by the United States Patent and Trademark Office.  A trademark registration indicates a classification of goods and services assigned to the registered trademark.  The United States Patent and Trademark Office utilizes a classification system as a means of reducing the burden on USPTO Examiners when searching for a trademark indicated in the trademark application.  The applicant is asked to provide a suggested classification at the time of filing, and the USPTO Examiner may change the classification during processing.  The classification is merely for convenience of searching; it does not limit or extend the applicant's or registrant's rights.  The classification assigned to a trademark registration has no effect on the validity or scope of protection of the registered trademark..

(1)      Concerning the third element, the plaintiff is not required to prove that the defendants' use of the mark "BMF" caused actual confusion, mistake, or deception.  Rather, the plaintiff must prove a likelihood of confusion, mistake, or deception.

(2)      You may consider several factors when determining whether the defendants' use of its trademark is likely to cause confusion about the source of the plaintiff's or defendants' goods.  The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all the evidence bearing on the question. The factors include:

(A)      The strength of the plaintiff's mark.  The more that consumers recognize the plaintiff's trademark as an indication of origin of the plaintiff's goods, the more likely it is that consumers would be confused about the source of the defendants' goods if the defendants use a similar mark.

(B)      The relatedness of the goods.  If the defendants and plaintiff use their trademarks on the same, related, or complementary kinds of goods there may be a greater likelihood of confusion about the source of the goods than otherwise.

(C)      The similarity of the marks.  If the overall impression created by the plaintiff's trademark in the marketplace is similar to that created by the defendants' trademark in appearance, sound, or meaning, there is a greater chance that consumers are likely to be confused by the defendants' use of the mark.

(D)     Evidence of actual confusion.  If use by the defendants of the plaintiff's trademark has led to instances of actual confusion, this strongly suggests a likelihood of confusion.  However, actual confusion is not required for a finding of likelihood of confusion.  Even if actual confusion did not occur, the defendants' use of the trademark still may be likely to cause confusion.  As you consider whether the trademark used by the defendants creates a likelihood of confusion, you should weigh any instances of actual confusion against the opportunities for such confusion.  If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion, you may find that there has not been substantial actual confusion.

(E)     The marketing channels used.  If the plaintiff's and defendants' goods are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

(F)     The likely degree of purchaser care.  If potential buyers of the goods are more sophisticated or the goods are more costly, then a ordinary buyer exercising ordinary caution may be more careful and discriminating and less likely to be confused by similarities in the plaintiff's and defendants' trademarks.

(G)     The defendants' intent in selecting its mark.  Knowing use by the defendants of the plaintiff's trademark to identify similar goods may strongly show an intent to derive benefit from the reputation of the plaintiff's mark, suggesting an intent to cause a likelihood of confusion.

(H)     The likelihood of expansion of the product lines.  When the parties' products differ, you may consider how likely they are to begin using their respective trademarks in the sale of the same products.  If there is a strong possibility that one party will expand its product line into the other's market, there is a greater likelihood of confusion.

You have heard evidence that Brock Weld is the owner of a trademark registration for the mark "BMF Wheels." for land vehicle parts, namely wheels, registered March 18, 2008 (Registration Number 3,400,041). That registration means that the owner of the Registration has the exclusive right to use the registered mark in commerce on or in connection with the goods or service specified in the registration, unless the registration is determined to be invalid. You may find that the registration is invalid if the plaintiff proves by a preponderance of the evidence that use of the mark is likely to cause confusion among ordinary buyers as to the source of its products.

(1)     For its second claim, the plaintiff contends that the defendants infringed its unregistered trademark, the BMF logo.  In order to establish infringement of its unregistered trademark, the plaintiff must prove each of the following elements by a preponderance of the evidence:

(A)     First, that the plaintiff began use of its "BMF" logo on or about November 1, 2003 as a trademark for its cylinder heads;

(B)     Second, that the plaintiff's use of the "BMF" logo was continuous;

(C)     Third, that the plaintiff's "BMF" logo is inherently distinctive or has acquired secondary meaning;

(D)     Fourth, that the defendants began to use their "BMF Wheels" logo after that date in an area where the plaintiff was selling its products; and

(E)     Fifth, that the defendants' use of its "BMF Wheels" logo is likely to cause confusion among ordinary purchasers as to the source of its products, as I previously explained.

(2)     If you find that the plaintiff has proved each of these elements, your verdict should be for the plaintiff.  If, on the other hand, you find that the plaintiff has failed to prove any of these elements, your verdict should be for the defendant.

(1)     Considering the third element, in order to determine if the plaintiff has met its burden of showing that the BMF logo is a valid trademark, you should classify it on the spectrum of trademark distinctiveness that I will explain to you now.

(2)     In deciding whether a trademark is protectable, you must consider whether a trademark is inherently distinctive.  An inherently distinctive trademark is a word, symbol, or device, or combination of them, which intrinsically identifies a particular source of a good in the market.  The law assumes that an inherently distinctive trademark is one that almost automatically tells a consumer that it refers to a brand or source for a product, and that consumers will be predisposed to equate the trademark with the source of a product.

(3)     Trademark law provides great protection to distinctive or strong trademarks.  Conversely, trademarks that are less distinctive or strong are called "weak" trademarks and receive less protection from infringing uses.  Trademarks that are not distinctive at all are not entitled to any trademark protection.

(4)     Trademarks are grouped into four categories according to their relative strength.  These four categories, in order of strength or distinctiveness, are: (A) arbitrary; (B) suggestive; (C) descriptive; and (D) generic.  An arbitrary or suggestive mark is inherently distinctive.  A descriptive mark is protected only if it acquires in consumers' minds a "secondary meaning," which is a term that I will explain in to you in a moment.  Generic marks receive no protection.

-30-

(1)     Arbitrary trademarks are inherently distinctive.  They are considered strong marks and are clearly protectable.  They involve the arbitrary, fanciful or fictitious use of a word to designate the source of a product.  Such a trademark is a word that in no way describes or has any relevance to the particular product it is meant to identify.  It may be a common word used in an unfamiliar way.  It may be a newly created (coined) word or parts of common words which are applied in a fanciful, fictitious, or unfamiliar way, solely as a trademark.

(2)     For instance, the common word "apple" became a strong and inherently distinctive trademark when used by a company to identify the personal computers that company sold.  The company's use of the word "apple" was arbitrary or fanciful because "apple" did not describe and was not related to what the computer was, its components, ingredients, quality, or characteristics.  "Apple" was used by the company in an arbitrary way to designate for consumers that the computer comes from a particular manufacturer or source.

(3)     Suggestive trademarks are also inherently distinctive, but they are considered weaker than arbitrary trademarks.  Unlike arbitrary trademarks, suggestive trademarks imply some characteristic or quality of the product to which they are attached.  If the consumer must use imagination or any type of multi-stage reasoning to understand the trademark's significance, then the mark does not describe the product's features, but suggests them.

(4)     A suggestive use of a word involves consumers associating the qualities the word suggests to the product to which the word is attached.  For example, when the word "apple" is used in a name such as "Apple-A-Day" applied to vitamins, it is being used as a

suggestive trademark.  "Apple" does not describe what the vitamins contain, but consumers may associate the vitamins with the common saying "an apple a day keeps the doctor away."

(5)     Descriptive trademarks directly identify or describe some aspect, characteristic, or quality of the product to which they are affixed in a straightforward way that requires no exercise of imagination to be understood.  For instance, the word "apple" is descriptive when used in the trademark "CranApple" to designate a juice made from cranberries and apples.  It directly describes ingredients of the juice.  Other common types of descriptive trademarks identify where a product comes from, or the name of the person who makes or sells the product.  Thus, the words "Apple Valley Juice" affixed to cider from the California town of Apple Valley is a descriptive trademark because it geographically describes where the cider comes from.  Similarly, a descriptive trademark can be the name of the person who makes or sells the product.  So, if a farmer named Judy Brown sold juice under the label "Judy's Juice," she would be making a descriptive use of her personal name to indicate who made the juice.

(6)     Generic trademarks are entitled to no protection at all.  They are the common name for the product to which they are affixed.  It is the general name for which the particular product or service is an example.  The parties agree that the mark is not generic.

(7)     If you decide that the BMF logo is arbitrary or suggestive, it is considered inherently distinctive.  An inherently distinctive trademark is valid and protectable.

(8)    If you decide that the BMF logo is descriptive, then in order to determine whether it is valid you also must decide whether the mark has acquired "secondary meaning," which I will explain to you now.

(1)     If you determine that the plaintiff's mark consisting of the BMF logo is descriptive, you must consider the recognition that the mark has among prospective purchasers.  This market recognition is called the trademark's "secondary meaning."

(2)     A word acquires a secondary meaning when it has been used in such a way that its primary significance in the minds of the prospective purchasers is not the product itself, but the identification of the product with a single source, regardless of whether consumers know who or what that source is.  You must find that the preponderance of the evidence shows that a significant number of consumers associate the BMF logo with a single source, in order to find that it has acquired secondary meaning.

(3)     You may consider the following factors when you determine whether the BMF logo has acquired a secondary meaning:

(A)     Whether the people who purchase the product that bears the claimed trademark associate that mark with its owner;

(B)     The length of time and manner in which the owner used the claimed trademark, and whether the owner's use of the claimed trademark was exclusive;

(C)     To what extent and in what manner the owner advertised under the claimed mark;

(D)     The volume of sales and number of customers who bought products from the owner under the mark;

-34-

(E)     The market share relative to competitors that the plaintiff has achieved for products sold under its mark; and

(F)     Whether the defendant intentionally copied the owner's trademark.

If you find that the defendants infringed either of the plaintiff's trademarks, you also must determine whether the defendants used the trademark intentionally, knowing it was an infringement.  You may record your finding on the verdict form, as I will explain later.

(1)     In order to recover damages for infringement of its registered trademark, the plaintiff must prove by a preponderance of the evidence that the defendants had either statutory or actual notice that the plaintiff's trademark was registered.

(2)     The defendant had statutory notice if the plaintiff displayed with the trademark any of the following:

(A)     The words "Registered in U.S. Patent and Trademark Office";

(B)     The words "Reg. U.S. Pat. & Tm. Off."; or

(C)     The letter "R" enclosed within a circle.

(3)     The defendants had actual notice if they knew of the registration.

(1)     If you find for the plaintiff on its claims that the defendants infringed its registered or unregistered trademarks, and you find that the plaintiff is entitled to damages, then you must determine the amount of the plaintiff's actual damages.

(2)     The plaintiff has the burden of proving actual damages by a preponderance of the evidence.  Damages means the amount of money that reasonably and fairly will compensate the plaintiff for any injury you find was caused by the defendants' infringement of the plaintiff's trademark.

(3)      In determining the amount of damages, you should consider the following:

(A).   The loss of plaintiff's goodwill, including injury to the plaintiff's general business reputation;

(B)     The cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement; and

(C)     Any other factors that bear on the plaintiff's actual damages.

(4)     When considering prospective costs such as the cost of corrective advertising, you must not overcompensate.  Accordingly, your award of future costs should not exceed the actual damage to the value of the plaintiff's mark at the time of the infringement by the defendants.

(5)     The amount of money to be awarded for certain of these elements of damage cannot be proved in a precise dollar amount.  The law leaves such amount to your sound

judgment.  Your verdict must be solely to compensate the plaintiff for its damages, and not to punish the defendants.

(1)     The plaintiff has a duty to use reasonable efforts to avoid or reduce its damages.  This is called "mitigation" of damages.

(2)     The defendants have the burden of proving that the plaintiff failed to mitigate its damages by establishing the following by a preponderance of the evidence:

(A)     The plaintiff failed to use reasonable efforts to mitigate damages; and

(B)     The amount by which damages would have been mitigated.

(3)     If you find that the plaintiff is entitled to damages and that the defendants proved that the plaintiff failed to mitigate its damages, you must reduce those damages by an amount of damages the plaintiff reasonably could have avoided.

That concludes the part of my instructions explaining the elements of the plaintiff's claims.  Now we will hear the closing arguments of the attorneys.  Please pay attention to the arguments, but remember that the closing arguments are not evidence but are only intended to assist you in understanding the evidence and the theory of each party.  You must base your decision only on the evidence.

(1)      Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

(2)      The first thing that you should do in the jury room is choose someone to be your foreperson.  This person will help to guide your discussions, and will speak for you here in court.

(3)      Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson.

(4)      I will send the exhibits into the jury room with you, so that you do not have to send a message to request them.

(5)      One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 5-3, or whatever your vote happens to be.  That should stay secret until you are finished.

(1)     Remember that you must make your decision based only on the evidence that you saw and heard here in court.  Do not try to gather any information about the case on your own while you are deliberating.

(2)     For example, do not conduct any experiments inside or outside the jury room; do not bring any books, like a dictionary, or anything else with you to help you with your deliberations; do not conduct any independent research, reading or investigation about the case; do not consult or visit the Internet; and do not visit any of the places that were mentioned during the trial.

(3)     During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as a telephone, cell phone, smart phone, iPhone, Blackberry or computer; the Internet, any Internet service, or any text or instant messaging service; or any Internet chat room, blog, or website such as Facebook, MySpace, LinkedIn, YouTube or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

(4)     Make your decision based only on the evidence that you saw and heard here in court.

-43-

Some of you have taken notes during the trial.  Whether or not you took notes, you should not be influenced by the notes of another juror, but you should rely on your own memory of what was said.  Notes are only an aid to recollection and are not entitled to any greater weight than actual recollection or the impression of each juror as to what the evidence actually is.

(1)     Your verdict, whether it is for the plaintiff or the defendants, must be unanimous.

(2)     To find for the plaintiff, every one of you must agree that the plaintiff has met its burden of proof on all the elements of its claims as I have previously explained them to you.

(3)     To find for the defendants, every one of you must agree that the plaintiff has not met its burden of proof on one or more of the elements of its claims.

(4)     Either way, your verdict must be unanimous.

(1)     Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

(2)     But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that: your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

(3)     No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

(4)     Listen carefully to what the other jurors have to say, and then decide for yourself if the plaintiff have proved its case.

(1)     I have prepared a verdict form that you should use to record your verdict.  The form reads as follows:  _____.

(2)     Follow the instructions on the form and fill in the answers to the questions by having your foreperson mark the appropriate place on the form.  When you have completed the form according to the instructions, your foreperson should then sign the form, put the date on it, and return it to me.

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You decide for yourselves the issues presented to for resolution by the evidence and my instructions on the law.