UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CFE RACING PRODUCTS, INC.,

        Plaintiff,                           Case Number 11-13744

v.                                            Honorable David M. Lawson

BMF WHEELS, INC. and BROCK
WELD,

        Defendants.
_____/

## OPINION AFTER JURY VERDICT REGARDING INJUNCTIVE RELIEF

This matter is before the Court on the plaintiff's request for injunctive relief after a trial in which the jury found that there was confusion between the plaintiff's and defendant's trademarks, but awarded no damages. On June 6, 2013, the jury in this case returned a verdict in favor of plaintiff CFE Racing Products, Inc., finding that the defendants had infringed CFE's registered and unregistered trademarks by the use of their BMF Wheels logos. The jury also found that the infringement was not intentional and that the plaintiff had not suffered any damages as a result of the infringement. The Court then ordered the parties to submit supplemental briefs on the question of the plaintiff's entitlement to a permanent injunction and an order canceling the defendants' BMF Wheels trademark registration. The parties briefed and argued their respective positions.

I.

The evidence at trial established that CFE holds registered trademarks for the letters "BMF," without claim to any particular font, style, size, or color, as a mark used on automotive cylinder heads and on clothing. CFE has used several versions of the BMF logo over the years, all of which feature black block letters that are slanted to the right, outlined in white and red on a black field. CFE has used the BMF logo on products such as valve covers for its cylinder heads; on its website;

and on clothing used to promote its cylinder heads. The plaintiff's BMF line of cylinder heads is a less expensive product intended for the amateur automotive enthusiast, whereas its principal lines are produced for professional racers. In some advertisements, CFE included the CFE Racing logo along with the "BMF" brand logo in order to convince customers that an established company was behind the new brand. CFE has never used the brand or logo on wheels, rims, or tires.

In 2006, defendant Brock Weld started his company BMF Wheels, Inc. to make and sell machined aluminum wheels intended for "lifted" trucks and SUVs. Brock Weld came up with the idea for the "BMF" brand in the summer of 2006, while talking to an associate, Blake Ramthun, who now works as a vice president for BMF. Weld told Rathmun that they should form a company to make "some bad mother-fucking wheels." Weld had a wallet his wife had given him around 2001 that had the letters BMF on it, which Weld took to mean "bad mother fucker," and his wallet was on the desk while he was talking to Ramthun, which prompted his comment. The two agreed to call their new company "BMF Wheels" until they could come up with a better name, but they never did. When customers ask Weld what "BMF" stands for, he just asks what they think it means, and the company does not promote a particular meaning for the acronym, but chooses to let customers interpret it however they want. Similarly, CFE Racing also does not promote a specific meaning for the letters BMF, but chooses to let customers believe what they want about what it means.

BMF Wheels features its logo prominently in its catalog of wheel products, on websites where its products are sold, and on its own website. The BMF Wheels logo bears a striking resemblance to the CFE Racing "BMF" brand logo. CFE used the white, red, and black version of the logo from 2006 to 2012, and recently created a new logo which is black with a shiny silver appearing outline.

Carl Foltz, president of CFE Racing, first became aware of BMF Wheels and the Wheels logo's resemblance to CFE's BMF logo in June 2011, when he received a text message from a girlfriend who had seen a truck with BMF brand wheels at a race in California. While at the race, the owner of the truck had spoken to Bob Panela Junior, a racer whom CFE sponsored, and commented, upon noticing the "BMF" logo on Panela's car, that he had wheels made by the same company. Brock Weld became aware of CFE Racing and CFE's "BMF" logo in early 2008, when his business associate, Justin Lundy, and Joe Lopez at Icon Media, the marketing company that developed the BMF Wheels logo, told Weld that another company was "ripping off" his logo.

CFE did not identify any vendor that features both"BMF" branded cylinder heads and BMF Wheels products, but it submitted several examples showing that BMF Wheels are sold or advertised in the same places as cylinder heads by other makers. The "4WheelParts" website lists BMF Wheels in the category "Wheels >> Aluminum Wheels," and lists cylinder heads by maker Edelbrock under "Performance Parts >> Engine Parts & Components >> Cylinder Head." Weld Racing and other wheel makers advertise in National Dragster magazine, which carries advertisements for cylinder heads; and CFE has in the past advertised its "BMF" brand cylinder heads in that magazine. CFE and BMF Wheels both have internet websites and advertise their products on the internet.

CFE attends the Performance Racing Industry ("PRI") trade show each year to showcase its products. BMF Wheels attends the Specialty Equipment Market Association ("SEMA") trade show each year, where it shows its products in the "Trucks, SUVs, and Off-Road" section. The PRI trade show focuses on the racing industry, but the SEMA show has twelve different sections, including a separate section for "racing and performance." CFE does not attend the SEMA show, and BMF Wheels does not attend PRI.

The Court submitted a special verdict form to the jury. In response to the particular questions posed, the jury found that: (1) "defendants' use of its mark in connection with the sale of its products creates a likelihood of confusion with the plaintiff's registered BMF trademark"; (2) "the plaintiff's unregistered BMF logo trademark is a valid trademark owned by the plaintiff"; (3) "the defendants' use of its mark in connection with the sale of its products creates a likelihood of confusion with the plaintiff's unregistered BMF logo, trademark," with respect to all five versions of the BMF logo pictured on the verdict form; (4) "at the time of the defendants' initial use of BMF, the defendants [did not] intend[] to derive a benefit from the plaintiff's goodwill or reputation"; and (5) "the plaintiff [did not] suffer[] actual damages." Verdict Form [dkt. #100] ¶¶ 1-5. The jury entered the figure "$0" in the space for "plaintiff's actual damages." *Id.* ¶ 6.

The BMF Wheels trademark was registered for use on March 18, 2008, and the defendants' registration states that the mark was first used in commerce on October 1, 2007. U.S. Trademark Reg. No. 3,400,041.

II.

The Court reserved the question of equitable remedies at trial until after the jury returned its verdict. The question of injunctive relief was not for the jury to decide. *See Sheila's Shine Products, Inc. v. Sheila Shine, Inc.*, 486 F.2d 114, 122 (5th Cir. 1973) (holding that because "the jury awarded no damages against either party, and the trial court found that no damages were appropriate," the question of injunctive relief was solely equitable in nature and was a matter "for court, not jury disposition"). At this stage of the case, therefore, the jury's verdict must be considered advisory. *See Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 397 (6th Cir. 2012) (discussing trial court determination that with equitable claims and defenses as to

which the jury makes related factual findings on legal claims, the jury's verdict is advisory). Nonetheless, the Court is not free to disregard the jury's findings altogether. When both equitable and legal claims are presented at a single trial, the "jury should determine the issues common to both claims." *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1174-75 (6th Cir. 1995) (citations omitted). In that setting, "'the jury's verdict operates as a finding of fact binding on the trial court in its determination of the equitable claims.'" *Ibid.* (quoting *Dybczak v. Tuskegee Institute*, 737 F.2d 1524, 1526–27 (11th Cir. 1984)).

The Lanham Act states that in trademark infringement actions the federal courts "shall have the power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a). It has been said that "[c]ourts will ordinarily award injunctive relief once a party has been found liable for trademark infringement," even if the jury has found in favor of the plaintiff but awarded no damages. *Ironclad, L.P. v. Poly-Am., Inc.*, No. 98-2600, 2000 WL 1400762, at *10 (N.D. Tex. July 28, 2000) (citing Restatement (Third) of Unfair Competition § 35(1)(b)). But injunctive relief is not automatic. In a case construing nearly identical language under the statute defining remedies for patent infringement, 35 U.S.C. § 283, the Supreme Court held:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (citations omitted). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *Ibid.*

The plaintiff seeks an injunction that (1) prevents the defendants from further infringement of the plaintiff's registered and unregistered marks; (2) requires them to "deliver for destruction all products, labels, tags, signs, prints, packages, and advertisements in their possession or under their control bearing or using any or all of [the marks depicted on the verdict form]"; (3) compels them to "exercise their best efforts to withdraw and recall from its distributors and retailers and all others" the same infringing materials; and (4) requires them to "remove from the marketplace all Internet, radio, print, or other advertisement in which [infringing marks appear]," and cease using "any websites, domain names, or social media that contain the 'BMF' trademark within the domain name or website address."

The plaintiff reasons that under *eBay Inc.*, it is entitled to injunctive relief because (1) the finding of a likelihood of confusion suffices to show that the plaintiff would suffer irreparable harm absent an injunction; (2) the defendants' continuing use of the infringing marks on its products proves that future harm is inevitable, and no adequate remedy is available at law to redress that future continuing harm; (3) the defendants will suffer no hardship because an injunction only would require them to conform their behavior to the law; and (4) the public interest will be served by an order that would end the use of the infringing marks and the resulting danger of confusion by consumers. The plaintiff believes it is entitled to a recall, delivery, and destruction order because the continued infringing conduct after the jury's verdict was rendered in June shows that it is needed to prevent future harm through the sale of products with the infringing mark. CFE also argues that

an order to cease using infringing domain names is appropriate despite the fact that the plaintiff's cyber piracy claim was dismissed, because the Cyber Piracy Act does not provide an exclusive remedy but only affords relief "in addition to any other civil action or remedy otherwise applicable." 15 U.S.C. § 1125(d)(3).

The defendants argue that the first factor under the *eBay* analysis does not favor CFE, because the plaintiff has made no effort to show that it suffered any actual harm. They contend that under the holding of *eBay*, the plaintiff is not entitled to rely on a presumption of harm, but must show actual harm. The defendants rely principally on the fact that the jury found that CFE had suffered no actual damages, and CFE therefore has not established that it suffered any harm at all as a result of the infringing conduct, irreparable or otherwise.

The jury was instructed to consider the factors in *Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982), to determine whether there was a likelihood of confusion caused by the defendants' logos and the plaintiff's protected mark. The jury found that a likelihood of confusion exists, and the defendants do not suggest that finding is unsupported by the evidence or otherwise contest the jury's determination. It is true that by its verdict the jury found that the confusion led to no monitary loss, meaning that the plaintiff did not suffer a loss of goodwill or injury to its general business reputation, or need to spend money on the cost of future corrective advertising to correct any public confusion caused by the infringement. But that does not mean that the confusion caused by the defendants' logos produced no injury. The plaintiff produced evidence that the confusion deprived it of the right to control its own business reputation. The value of a company's reputation cannot be measured in damages; only an order to cease the infringing conduct can remedy that harm. *See Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006); *cf. Lucky's*

*Detroit, LLC v. Double L, Inc.*, No. 12-1760, 2013 WL 4034418 (6th Cir. Aug. 9, 2013). The plaintiff has shown both irreparable harm and an inadequate remedy at law.

*Allied Erecting & Dismantling Co. v. Genesis Equipment & Manufacturing, Inc.*, 511 F. App'x 398 (6th Cir. 2013), cited by the defendants, is not to the contrary and certainly distinguishable. In that case, the jury awarded money damages on the plaintiff's unjust enrichment claim stemming from misappropriation of trade secrets. The plaintiff did not make any showing either that the damage award was inadequate to redress its losses or that it had lost any actual sales as a result of the defendant's misappropriation of trade secrets. Moreover, the court of appeals found it significant that the plaintiff did not ask for injunctive relief until after the jury rendered its verdict and concluded that "[r]egardless of the merits of generally presuming irreparable harm in trade-secrets litigation, the court finds that such a presumption is not applicable here and that the district court did not err in finding that Allied failed to demonstrate irreparable harm." *Id.* at 405. In this case, the plaintiff demonstrated irreparable harm.

The defendants also argue that the balance of hardships heavily favors denying the relief demanded by the plaintiff, because it would impose a severe hardship on BMF Wheels, and CFE has not shown that it will suffer any hardship at all based on the defendants' current use of the BMF Wheels brand in the sale of wheels only. The defendants insist that the requested relief would be devastating to the company and the resulting losses would bankrupt BMF Wheels. The defendants argue that, in contrast with the absence of actual harm found by the jury, and the lack of any evidence that CFE suffered any brand erosion or any past actual lost sales, the proposed relief would likely put BMF Wheels out of business.

Defendant Brock Weld and Blake Ramthun assert that the company already has committed to the production of 28,000 wheels by its suppliers, which cannot be canceled, representing 8,000 wheels already committed for sale to its distributors and 20,000 wheels that it expects to sell in the next 10 months. Weld decl. ¶ 10(j); Ramthun decl. at 3 n.1. Rathmun asserts that the 2,000 wheels in its current inventory and 8,000 wheels that its distributors already have committed to buy represent a product expense of more than $3.5 million, and that the company could not afford to absorb a loss that large. Ramthun decl. ¶ 14. Moreover, the defendants assert that they would have to pay for all of the wheels currently on order with their suppliers, whether or not those wheels are actually produced or delivered. Weld decl. ¶ 10(j).

Weld asserts that the company would need at least 90 days to complete a transition to using a new logo on its wheels in process, because it would take at least that much time to develop new molds for cast wheels and new Computer Numerical Control ("CNC") programs used to machine the logo into the wheel faces, as well as to order and receive packaging with a new logo. Weld decl. ¶¶ 10(f)-(i). Weld points out that the very small "BMF Wheels" name molded into the back of its wheels normally is never seen by anyone once the wheel is installed, and he asks that the Court not require the company to retool molds to remove that marking. Weld decl. ¶ 10(h). Weld also asserts that it would take 90 days to develop the artwork for a new logo and transition all websites, social media, and print advertising to the new brand. Weld decl. ¶¶ 10(d)-(e). Weld contends that in order to implement all of these changes, "logistically it would take anywhere from 12 to 24 months" to complete the full transition to a new brand.

Of course, those time estimates were given in mid-July 2013, and the passage of time during the pendency of the supplemental relief motions no doubt has lessened the impact of an injunction, presuming that the defendants have put that time to good use, as would have been prudent.

Nonetheless, the defendants argue that an injunction is not warranted in order to avoid future harm, because the defendants are willing to agree to use their "BMF Wheels" mark in the production and sale of wheels only and no other products. The defendants contend that the jury only found that infringement was established "based on CFE's extensive reliance on the 'likelihood of expansion of the product lines,'" and that in the absence of such expansion no actual future harm will occur. But the special verdict returned by the jury reveals no such specific finding, and the Court instructed the jury that it should consider all eight of the *Frisch* factors — as well as any other facts established by the evidence — and that the presence or absence of any one factor should not determine the outcome alone:

> You may consider several factors when determining whether the defendants' use of a trademark is likely to cause confusion about the source of the plaintiff's or the defendants' goods. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, but you . . . must consider all the evidence bearing on the question.

Trial Tr. June 28, 2013 [dkt. #109] at 23. Jurors are presumed to follow the instructions given by the Court, *United States v. Harvey*, 653 F.3d 388, 396 (6th Cir. 2011), and it therefore is not possible to infer based on the finding of a "likelihood of confusion" alone, or on any particular emphasis given to the factors by the plaintiff's counsel in argument, that the jury necessarily must have relied on one particular factor more than or in exclusion to the others.

Balancing the relative harm in this case does not result in a conclusion that an injunction should be denied. Instead, it is a factor that weighs more heavily on the scope and extent of

-10-

injunctive relief. "In trademark cases, the scope of the injunction to be entered depends upon the manner in which plaintiff is harmed, the possible means by which that harm can be avoided, the viability of the defenses raised, and the burden that would be imposed on defendant and the potential effect on lawful competition between the parties." McCarthy on Trademarks and Unfair Competition § 30:3 (4th ed. 2013). "The law requires that courts closely tailor injunctions to the harm that they address." *ALPO Petfoods v. Ralston Purina Co.*, 913 F.2d 958 (D.C. Cir. 1990).

In shaping the injunctive remedy, this Court has "a wide range of discretion"; options available include (1) allowing the defendant to continue using its mark, but only within certain geographic or product line restrictions; (2) issuing some form of disclaimer of association in connection with use of the mark; and (3) allowing the use of the mark only with a particular distinctive logo or in a specified size and format. McCarthy on Trademarks and Unfair Competition § 30:3 (4th ed. 2013). The Court also "may delay the implementation of an injunction [to] allow an infringer time to change to a different mark," and may permit the defendant to sell off its stock of infringing goods or to fill orders already placed, in order to avoid the wasteful destruction of existing stock or severe damage to the defendant's business reputation. *Ibid.*

In this case, it is plain that the defendants did not engage in willful infringement, they obtained what they thought was legal protection of their mark, and their activity did not result in any financial harm to the plaintiff. Moreover, the evidence indicates that the plaintiff and the defendants are not direct competitors, at least with the defendants' current product lines. An injunction that effectively puts the defendants out of business would not serve any reasonable remedial purpose, which is to restore to the plaintiff the rightful control over its mark and eliminate the likelihood of confusion of the defendants' products with those of the plaintiff.

An injunction tailored to achieve that result would serve the public interest. The plaintiff is entitled to a commercial environment that permits it to use its first-filed mark free of confusion with the defendants and their products. But a tailored injunction that permits the defendants to remain in business serves the public interest as well, by permitting a viable business to operate within a market that does not overlap with the plaintiff and its customers.

To achieve those twin purposes, the injunction that will issue must: (1) prohibit the defendants from using the logos found to be confusing by the jury, and any other logo that is styled to approximate the plaintiff's mark as it has been used in commerce; (2) prohibit the defendants from using the letters "BMF" in its product designation *except* when used in the phrase "BMF Wheels," and then only when accompanied by a disclaimer that the product and company is not affiliated in any way with BMF cylinder heads, CFE Racing Products, Inc., or any of CFE's product lines; (3) require the defendants to withdraw all advertising in all media that bears the logos found by the jury to be confusing; (4) prohibits the defendants from using the letters "BMF" on any product except wheels and rims; (5) prohibits the defendants from producing any products bearing the logos found by the jury to be confusing after June 30, 2014; (6) requires the defendants to dispose of (that is, sell or destroy) all existing stock of products bearing the logos found by the jury to be confusing on or before September 30, 2014; and (7) prohibits the defendants from using any websites, domain names, or social media that contain the letters "BMF" within the domain name or website address *unless* the letters are included in the phrase "BMF Wheels" and accompanied by the disclaimer stated above.

The plaintiff also asks the Court to cancel the defendants' U.S. Trademark Registration Number 3,400,041 for "BMF Wheels." The defendants contend that cancellation of the BMF

-12-

Wheels registration would result in no discernible benefit to CFE, while profoundly harming them and inviting competitors to abuse its brand by making "knock off" wheels. "In any action involving a registered mark the court may determine the right to registration, order the cancellation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action."  15 U.S.C. § 1119.  The Court may cancel a registration either as to all goods specified or may cancel it only as to some goods listed. McCarthy on Trademarks and Unfair Competition § 30:108 (4th ed. 2013).  The district court's power of cancellation is limited to the same grounds on which the Patent and Trademark Office may cancel registrations under 15 U.S.C. § 1064.  *Id.* § 30:112 (citing *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 897 F. Supp. 2d 856, 869-70 (N.D. Cal. 2012) ("Federal courts may cancel registrations based on the same grounds that would be applied by the U.S. Patent and Trademark Office ("USPTO").").  "For Principal Register registrations less than five years old, cancellation may be based upon any ground that would have prevented registration in the first instance," McCarthy on Trademarks and Unfair Competition § 20:42 (4th ed. 2013), and the most common reason for cancellation in an infringement action is a finding that the defendant's mark is confusingly similar to one held by the plaintiff, *id.* § 20:53.

For the same reasons the injunction is tailored to balance the equities in this case, the Court finds that the registration should not be cancelled outright, but instead must be limited.  The principal point of confusion found by the jury was the use by the defendants of their logos, which closely approximated the style, font and colors used by the plaintiff's use of the letters "BMF" in connection with its products.  The jury plainly did not believe that the defendants' use of the phrase "BMF Wheels" led to any commercial loss to the plaintiff or required corrective advertising to set

the public straight. Confining the defendants' use of its registration to the phrase "BMF Wheels" and limiting their use of that phrase adequately protects the plaintiff's interest in its mark. Therefore, the defendants will be prohibited from using their registered mark in connection with the production, promotion, display or sale of any product except automotive wheels and rims. And the use of the mark must be accompanied by the disclaimer described above.

The plaintiff also asks the Court to require the defendants to recall and destroy all stock of products in the marketplace and in production that bears the mark "BMF." The Court unquestionably has the authority to make such an order, but the federal courts generally reserve that remedy for cases involving willful infringement, false advertising, or other compelling factors such as a defective product that poses a risk to the health or safety of consumers. McCarthy on Trademarks and Unfair Competition § 30:8 (4th ed. 2013). The Third and Ninth Circuits have adopted a three factor analysis in weighing whether a recall and destruction order is appropriate, which requires the Court to consider: (1) the degree to which the infringement was intentional or willful; (2) whether the risk of confusion to the public and injury to the trademark owner is greater than the burden of the recall to the infringer; and (3) whether there is a substantial risk of danger to the public due to the infringing activity. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873 (9th Cir. 2009); *Gucci America, Inc. v. Daffy's, Inc.*, 354 F.3d 228 (3d Cir. 2003).

The Court finds that the defendants' infringement was not intentional, the risk of confusion is minimal except for the defendants' use of logos that closely resemble the plaintiff's product logos (as the jury found), and there is no danger to the public from the circulation of the defendants' products in the marketplace. Therefore, the Court believes that allowing the defendants additional

-14-

time to sell its existing stock of products, as discussed above, provides a sufficient remedy for the infringement.

The plaintiff also seeks attorneys fees. The Lanham Act provides that "the court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Sixth Circuit has held that "a case is not exceptional unless the infringement was malicious, fraudulent, willful, or deliberate." *Audi AG v. D'Amato*, 469 F.3d 534, 551 (6th Cir. 2006) (quotation marks omitted). Because there was no such finding, the plaintiff is not entitled to attorneys fees under the Lanham Act.

The Michigan Consumer Protection Act allows "a person who suffers loss as a result of a violation of this act [to] bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorneys' fees." Mich. Comp. Laws § 445.911(2). The reference to a plaintiff who "suffers loss" has been construed by Michigan courts to mean one who proves actual damages. *See Gorman v. American Honda Motor, Co.*, No. 303005, 2013 WL 4004538, slip op. at 9 (Mich. Ct. App. Aug. 6, 2013) ("The plaintiff's breach of warranty claim under the MCPA survived . . . because nominal damages may be awarded under the MCPA without proof of actual damages.") (citing Mich. Comp. Laws § 445.911(2)); *ForeWord Magazine, Inc. v. OverDrive, Inc.*, No. 10-01144, 2013 WL 140195 (W.D. Mich. Jan. 10, 2013) (denying attorney fees under the MCPA where the complaint sought only injunctive relief and rejecting the plaintiff's argument that it had shown a "loss" where the defendant "wrongfully retained and misused [the infringing] domain name in a way that was likely to cause consumer confusion"); *see also Deacon v. Pandora Media, Inc.*, 901 F. Supp. 2d 1166, 1177-78 (N.D. Cal. 2012) (citing the language of Mich. Comp. Laws § 445.911(2) allowing only a person who "suffer loss" to pursue a class action and dismissing claims

because the plaintiff failed to allege any actual injury in the complaint).  The plaintiff is not entitled to recover its attorney fees under the MCPA, because the jury's specific finding of $0 actual damages establishes that it did not "suffer loss" as a result of the defendants' infringement.  However, the parties stipulated at trial that if the jury found a violation of the Lanham Act, the defendants would be deemed to have violated the MCPA.  Therefore, the plaintiff is entitled to statutory damages of $250.

### III.

The Court finds that the balance of the relevant factors favors issuance of a permanent injunction, and the plaintiff has established an entitlement to such relief.  An injunction as described above will issue in the Court's final judgment.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   February 24, 2014

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 24, 2014.

s/Shawntel Jackson
SHAWNTEL JACKSON

---