UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CFE RACING PRODUCTS, INC.,

                Plaintiff,                              Case Number 11-13744

v.                                            Honorable David M. Lawson

BMF WHEELS, INC. and BROCK
WELD,

                Defendants.

_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S FIFTH MOTION FOR
CONTEMPT, DENYING DEFENDANTS' EMERGENCY MOTION TO CLARIFY
INJUNCTION, AND GRANTING PLAINTIFF'S MOTION FOR ATTORNEY FEES**

After this case was remanded by the court of appeals, this Court entered an amended

judgment on October 1, 2015, which contained injunctive orders that substantially increased the

restrictions on the defendants' activity with respect to the trademarks that it had infringed in this

case. Shortly thereafter, the plaintiff filed its fifth motion for an order holding the defendants in

contempt, this time of the amended judgment; the plaintiff filed a motion for an award of attorney

fees on its claims under the Michigan Consumer Protection Act (MCPA); and the defendants filed

an emergency motion for an order "clarifying" that the injunctive provisions of the amended

judgment allow them to "redirect" Internet traffic using the domain name "bmfwheels.com" to their

new website at "sotaoffroad.com." The Court adjourned the previously scheduled hearing on these

motions and ordered the parties to engage in facilitative mediation to attempt to resolve the issues

raised in all of them. When those efforts failed, the Court held a hearing on the motions in open

court on April 18, 2016. The Court finds that the defendants' request to "clarify" the injunction is

actually a request to modify it, which has no merit. That motion will be denied. Because the

defendants have violated the Court's injunction, the Court will find them in contempt and order

sanctions. The Court also finds that the plaintiff's request for attorney's fees is proper and reasonable, and the motion will be granted.

I.

On June 6, 2013, a jury returned a verdict in favor of plaintiff CFE Racing Products, Inc., finding, among other things, that the defendants, BMF Wheels, Inc. and Brock Weld, had infringed CFE's registered and unregistered trademarks, but also that the infringement was not intentional and that the plaintiff had not suffered any damages as a result of the infringement. The jury found, however, that the defendants' logos created a likelihood of confusion with the plaintiff's registered and unregistered trademarks. Thereafter, on February 24, 2014, the Court entered a judgment that awarded the plaintiff certain equitable relief. The defendants then were enjoined from using any of the logos after September 30, 2014 that the jury found were confusing with the plaintiff's logos or marks; using the letters "BMF" after September 30, 2014 in their product descriptions or designations except when used in the phrase "BMF Wheels," and then only when accompanied by a disclaimer that the product and company is not affiliated in any way with BMF cylinder heads, CFE Racing Products, Inc., or any of CFE's product lines; using the letters "BMF" on any product except wheels and rims; producing any products bearing the logos after June 30, 2014; and using any websites, domain names, or social media that contain the letters "BMF" within the domain name or website address unless the letters are included in the phrase "BMF Wheels" and accompanied by the disclaimer. The defendants also were ordered to withdraw all advertising on or before April 30, 2014 in all media that bore the logos; and dispose of, by sale or destruction, all existing stock of products bearing the logos on or before September 30, 2014. The defendants appealed the verdict

-2-

and judgment, and the plaintiff cross-appealed. No stay of the judgment was granted by this Court or the court of appeals.

The Court's original judgment reflected its view that a proper balancing of the equities called for the modest restrictions on the defendants' activity. The Court arrived at that conclusion after having the benefit of sitting through the trial and listening to the jury. The jury had commented after their deliberations that they found that the plaintiff was not damaged, which was reflected in their verdict, and although they followed the instructions carefully, they were dismayed about the decision that they had to make, believing that they had to rule for the wrong side, but, nonetheless, that was what the law required. On appeal, the court of appeals criticized the injunction as too generous to the defendants, and that court remanded with instructions to stiffen the injunction, specifically preventing the defendants from using the letters "BMF" for any purpose — even with a disclaimer — regardless of their inclusion in any visual design.

On October 1, 2015, after the Sixth Circuit remanded the case to this Court with instructions to modify the injunction and award the plaintiff its reasonable attorney fees, the Court entered an amended judgment imposing injunctive relief. The judgment commanded the defendants to (1) stop using all trademarks and logos containing the letters "BMF"; (2) stop using all Internet websites, domain names, and social media containing the letters "BMF"; and (3) "forthwith" withdraw all advertising in all media including any infringing marks and sell or destroy all products bearing infringing marks or logos. The amended judgment states as follows:

> It is **ORDERED AND ADJUDGED** that the defendants, BMF Wheels, Inc. and Brock Weld, their agents, servants, employees, attorneys and all those in active concert and participation with them who receive actual notice of this judgment are **PERMANENTLY RESTRAINED AND ENJOINED** from using any trademark or logo that includes the letters "BMF."

It is further **ORDERED AND ADJUDGED** that the defendants, BMF Wheels, Inc. and Brock Weld, their agents, servants, employees, attorneys and all those in active concert and participation with them who receive actual notice of this judgment are **PERMANENTLY RESTRAINED AND ENJOINED** from using any websites, domain names, or social media that contain the letters "BMF."

It is further **ORDERED AND ADJUDGED** that the defendants, BMF Wheels, Inc. and Brock Weld, their agents, servants, employees, attorneys and all those in active concert and participation with them who receive actual notice of this judgment forthwith **MUST** withdraw all advertising in all media that bears the infringing marks or logos, and dispose of, by sale or destruction, all existing stock of products bearing the infringing marks or logos.

Am. J. [dkt. #204].

On October 5, 2015, the plaintiff filed another motion to hold the defendants in contempt, their fifth such motion since the original judgment was entered. The defendants countered with a motion on October 13, 2015 to "clarify" that they would be allowed to maintain their bmfwheels.com website for the purpose of redirecting visitors to their new website, sotaoffroad.com. The plaintiff then filed its motion for attorney's fees on October 15, 2015.

The Court scheduled a hearing on the defendants' motion to clarify, along with a motion filed by defense counsel to withdraw (which since has been withdrawn), for November 19, 2015. At that hearing, defense counsel acknowledged that he was not seeking clarification of the amended injunction, but instead wanted an amended judgment that would allow a transition period to permit the defendants to continue using the "BMF" mark to sell off their inventory. The following exchange occurred:

> THE COURT:      I guess what you want is a different judgment, right?
> MR. CANTOR:     We've asked for either to say that this []is okay or for a modified judgment. If you look at our motion, we've also asked that you modify it, if you don't think this is appropriate to allow us to do it yes, we are asking for a different judgment. If you feel what we're doing [is] wrong, sure. Yeah.

Hrg. Tr. at 9 (Nov. 19, 2015). The defendants expressed no confusion over the meaning of the amended judgment or their obligations thereunder.

At the conclusion of the hearing, the Court found no basis to modify its injunction, but it did note that the defendants might benefit from the opportunity to negotiate with the plaintiffs for the relief they sought: more time to dispose of their inventory and permission to continue using the plaintiff's mark in its infringing domain name to redirect traffic to their new website. *Id.* at 14-15. The Court adjourned the contempt and attorney's fees motions and ordered the parties into mediation. No resolution resulted from that process, however, and the parties appeared before the Court to argue the contempt and attorney's fee motions on April 18, 2016.

II.

A.  Defendants' Motion to Clarify Injunction

Shortly after the amended judgment was entered, the plaintiff's attorneys sent a copy of the judgment to the defendants' domain name registrar, GoDaddy.com. In response, GoDaddy disabled the domain name "bmfwheels.com," which halted the routing of all Internet traffic to the defendants' old website. The defendants subsequently filed their emergency motion for an order to "clarify" the injunctive provisions of the amended judgment. In their motion, the defendants ask the Court "to enter an Order allowing GoDaddy to reinstate bmfwheels.com for the sole purpose of redirecting its visitors to sotaoffroad.com."

Under Federal Rule of Civil Procedure Rule 59(e), a court may alter or amend a judgment if there is "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir.

1999)).  This motion is a non-starter.  As explained below, "redirecting" Internet traffic plainly constitutes "use" of the prohibited "bmfwheels.com" domain name.  The amended judgment does not allow that use.  As noted earlier, at the November 19, 2015 hearing, the defendants' attorney conceded as much, when the Court asked if the defendants were not essentially asking the Court to modify the amended judgment, to which defense counsel responded in the affirmative.

Of the grounds listed above, the only one that conceivably might apply is the need to prevent an injustice.  But the amended judgment was entered at the direction of the court of appeals because the original judgment was too lenient on the defendants and their commercial activity.  The amended judgment does not allow the defendants to do what they want with their "bmfwheels" website.  No "clarification" is need to affirm that restriction.  And the defendants have not made any showing — or even attempted to show — that the terms of the judgment should be modified to allow them to do as they ask.

### B.  Plaintiff's Motion for Contempt

Before addressing the present contempt motion, a little history is in order.  This is the plaintiff's fifth post-judgment motion for sanctions based on the defendants' contemptuous disregard of the Court's injunctions.  The Court twice held the defendants in contempt for violating the generous terms of its original injunction, which allowed the defendants to continue using their infringing trademark with certain modifications and an accompanying disclaimer.  On June 24, 2014, the Court held the defendants in contempt for (1) continuing to use in advertising and on the Internet and social media logos that the jury found to infringe the plaintiff's mark; and (2) using several variations of their logo that the Court also found were infringing.  The Court ordered the defendants to pay $500 per day for each day that their infringing conduct continued and awarded the plaintiff

attorney's fees of $2,000 relating to the contempt motion.  On February 20, 2015, the Court again sanctioned the defendants for continuing to display photographs of old infringing logos on the Internet and in their advertisements, as well as for using a new logo (which the Court had approved in a previous ruling) without the disclaimer required under the original injunction.  The Court awarded the plaintiff attorney's fees of $5,000 and again imposed a *per diem* fine, this time in the amount of $750 per day.

The plaintiff filed a third and fourth motion for contempt, but, because the intervening decision of the Sixth Circuit required the Court to vacate the original injunction and enter a new one, the Court dismissed those motions without prejudice on the same day that it entered the amended judgment.

The plaintiff's present contempt motion must be viewed against this backdrop.  The plaintiff contends that, despite the Court's admonishment on the record at the November 19, 2015 hearing that the defendants must comply with the judgment, despite having twice previously incurred contempt sanctions and having to pay the plaintiff's costs in prior contempt proceedings, and contrary to the plain terms of the amended judgment, the defendants continued to use their infringing marks on the Internet and in advertising after October 1, 2015.  In particular, the plaintiff alleges that as of October 5, 2015 (the date of filing of the plaintiff's motion) the defendants (1) continued to operate the website "bmfwheels.com," replete with images of the "BMF Wheels" logo and products; (2) continued using their Instagram account (instagram.com/bmfwheels) to display photographs of infringing products and logos, along with advertising stating that "BMF Wheels is becoming SOTA Offroad"; (3) continued using their Facebook account (facebook.com/BMFWheel) to display abundant images of infringing logos and products and references to the BMF Wheels to SOTA

Offroad transition; and (4) rather than moving promptly to comply with the Court's judgment, instead responded to the plaintiff's demands for compliance with obtuse offers to discuss the terms of a proposed "monetary settlement" only if the plaintiff acceded to the defendants' desire to continue selling infringing products and using infringing Internet properties and advertising through September 30, 2016, with an allowance for "replacement caps" for old wheels to be sold for up to three years. The plaintiff documented its accusations with exhibits showing screen shots of the defendants' online conduct.

As noted above, shortly after the amended judgment was entered, the plaintiff's attorneys sent a copy of the judgment to the defendants' domain name registrar, GoDaddy.com. In response, GoDaddy disabled the domain name "bmfwheels.com," which halted the routing of all Internet traffic to the defendants' old website. The defendants responded by moving the entire content of that old website, including their online catalog of old products bearing the infringing logos and marks, to a subsection of their new website at "sotaoffroad.com/legacy." More than a month after the amended judgment was entered, when the plaintiff filed its reply brief in support of the motion for contempt, the defendants continued to use the "legacy" subsection of the new website. The defendants also, in the meantime, had begun using another domain, "bmfwheel.com" to "redirect" traffic to the sotaoffroad.com/legacy website.

The plaintiff argues that the defendants' approach to liquidating their stock of infringing products has been lackadaisical at best and plainly violated the directive in the amended judgment to sell or dispose of all infringing goods "forthwith." The plaintiff filed a supplemental brief summarizing the information about post-judgment disposal of infringing products that the defendants disclosed under the Court's limited discovery order. That information indicates that,

between October 1, 2015 and February 10, 2016, the defendants sold 4,185 wheels bearing the infringing marks.  During the same period, the defendants destroyed 279 wheels, most of that number in the first ten days of February 2016.  From the sale of more than 4,000 wheels, the defendants realized gross revenue of $821,366.91.  The defendants' figures also indicate that they realized $20,607.53 from sales of other, non-wheel products bearing the infringing marks.  The plaintiff points out that the defendants sold 1,845 wheels from December 1, 2015 through February 10, 2016, despite representing to the Court at the November 19, 2015 hearing that they had, at that time, only 1,000 wheels left to dispose of.  *See* Hr'g Tr. at 13 (Nov. 19, 2015) ("THE COURT: What's left? MR. CANTOR: A thousand wheels.  We have a thousand wheels [and] our distributors have wheels and that's everything.  Everything else is SOTA.  It's all we've got is a thousand."). The plaintiff concedes that the injunction certainly allowed some time for the defendants to arrange for sale or disposal, but it asserts that the stock reasonably could have been sold or destroyed on an expedited basis by October 15, 2015.  According to the figures that the defendants disclosed, 90% of the wheel sales occurred after that date, over the ensuing four months.

Finally, the plaintiff asserts that the defendants previously indicated that, as of October 4, 2015, they had infringing goods in the production pipeline as well as on hand, *see* Plf.'s Mot., Ex 5, Letter dated Oct. 4, 2015, at 2.  But they only disclosed to the Court and the plaintiff information about the disposition of wheels in their current inventory as of October 1, 2015.

The defendants argue that they have complied with the injunction in all respects, which, they contend, allowed them to continue selling products and using their infringing brand on the Internet and in advertising for "a reasonable time" needed to dispose of their existing inventory.  The defendants argue that if the injunction did not allow them to carry out an orderly transition to their

-9-

new brand, then it is not clear and definite and they cannot be held in contempt for violating it.  They argue, moreover, that "redirecting" Internet traffic to the sotaoffroad.com/legacy website by way of the old domain bmfwheels.com does not constitute "use" of the old domain name contrary to the injunction.  The defendants also argue that CFE Racing is not entitled to relief on its motion for contempt because the motion was filed while the parties were in the midst of ongoing negotiations to establish a transition timeline, which the plaintiff's attorneys had indicated they were interested in pursuing.  According to the defendants, during a telephone call on October 2, 2015, counsel for the parties agreed that no motions would be filed by either side for a week while negotiations continued.  However, after the defendants' attorney emailed a proposed transition timeline to plaintiff's counsel on October 4, 2015, the plaintiff responded with an email refusing the proposal on October 5, 2015, and then filed its motion for contempt 15 minutes later.

In a supplemental brief, the defendants assert that, as of March 4, 2016, they no longer have any infringing products in their possession, and all old products have been destroyed or sold.  The defendants argue that, since they now have ceased all of the purportedly offending conduct, there would be no opportunity for them to lessen any retrospective fine imposed by the Court by making any future change to their behavior, and, therefore, any sanction other than a strictly prospective, *per diem* penalty, would be "punitive" and inappropriate as a remedy for civil contempt.

"In a civil contempt proceeding, the petitioner must prove by clear and convincing evidence that the respondent violated the court's prior order." *Glover v. Johnson*, 934 F.2d 703, 707 (6th Cir. 1991).  The charging party must prove the existence of a court order and show that the respondent's conduct violated its terms.  *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) (plaintiffs "ha[ve] the burden of establishing by clear and convincing evidence that the [defendants]

-10-

'violated a definite and specific order of the court requiring [them] to perform or refrain from performing a particular act or acts with knowledge of the court's order.'") (quoting *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987)). Since civil contempt is remedial in nature, the charging party need not establish willfulness; "intent in disobeying [an] order . . . is irrelevant to the validity of the contempt finding." *In re Jaques*, 761 F.2d 302, 306 (6th Cir. 1985) (citation omitted). "[I]mpossibility [is] a defense to contempt, but the [defendant] ha[s] the burden of proving impossibility, and that burden is difficult to meet." *Glover*, 934 F.2d at 708 (quotation marks omitted). "Although diligence is relevant to the question of ability to comply . . . evidence of diligence alone does not satisfy that burden." *Ibid.* "Good faith is not a defense in civil contempt proceedings." *Gnesys, Inc. v. Greene*, 437 F.3d 482, 493 (6th Cir. 2005). "[T]he test is not whether defendants made a good faith effort at compliance but whether 'the defendants took all reasonable steps within their power to comply with the court's order.'" *Glover*, 934 F.2d at 708 (quoting *Peppers v. Barry*, 873 F.2d 967, 969 (6th Cir. 1989)).

There is no doubt that the defendants have disobeyed this Court's judgments. Even when governed by the lenient provisions of the first judgment, the defendants have pushed the limits of permissible conduct, frequently crossing the line into contumacious territory. They have spurned the Court's grace and generosity, and blithely disregarded its attempts to coddle and cajole them into working out a compromise with the plaintiff that would allow them to complete an orderly transition to a new brand. Most recently, they have pressed the clear limits of allowable conduct, lately professing at oral argument an inability to understand the meaning of "forthwith" as a justification to continue their infringing activity beyond the bounds of reason. In the previous orders of contempt, the Court has attempted to send a message that the defendants must conform their conduct

-11-

to the requirements of the Court's orders and judgments. That message, evidently, has fallen on deaf ears. Therefore, this Court's order will impose sanctions that are intended to serve the remedial purpose of exacting future compliance with the amended judgment, due to the following violations.

### 1. Use of Internet Websites and Social Media

There is nothing unclear in the language of the amended judgment, and it plainly does not allow the defendants, after October 1, 2015, to make any use whatsoever of the prohibited "bmfwheels.com" domain name, the "facebook.com/BMFWheel" social media address, or the "instagram/bmfwheels" social media account. The amended judgment prohibits the defendants from using "*any* trademark or logo that includes the letters 'BMF.'" (Emphasis added). As to the use of Internet websites and domain names, the amended judgment enjoins the defendants from "using *any* websites, domain names, or social media that contain the letters 'BMF.'" (Emphasis added.). "The word 'any' means just what it says. It includes 'each' and 'every.' . . . It comprehends the 'slightest.'" *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 905-06 (6th Cir. 1988) (quoting *Sifers v. Horen*, 385 Mich. 195, 199 n.2, 188 N.W.2d 623, 624 n.2 (1971)). Moreover, that provision of the judgment contained no temporal allowance; it was an immediate mandate requiring the defendants to *stop using* the infringing Internet identifiers and accounts from the date of entry of the amended judgment.

The defendants believe that "redirecting" traffic from "bmfwheels.com" to "sotaoffroad.com" does not constitute "use" of the prohibited domain. That position is frivolous and nonsensical. The only use for an Internet domain name is to direct visitors and communications to the owner's Internet presence. There is no meaningful distinction between "directing" and

-12-

"redirecting" Internet traffic.  Employing the old domain name for the sole purpose for which it is intended certainly constitutes "use" of it by any sensible meaning of that word.  The defendants want to use "bmfwheels.com" to direct customers searching for its old brand identity or who enter the old website address into their browser to a website emblazoned with their new brand.  The amended judgment bars the defendants from using the old domain name for that or *any* other purpose.

### 2. Withdrawal of Advertising With Infringing Marks

The amended judgment stated that the defendants "forthwith **MUST** withdraw all advertising in all media that bears the infringing marks or logos."  The extensive use of the "BMF Wheels" logo and mark on the sotaoffroad.com/legacy website, and the numerous depictions of old infringing products, all plainly violated the withdrawal term of the amended judgment.  Not only did the defendants not withdraw the advertising, they created a whole new outlet for publishing it when their prior domain name registrar deactivated the bmfwheels.com domain upon receiving a copy of this Court's amended judgment.

Moreover, the plaintiff asserts — and the defendants admit — that the defendants *continue to use the "BMF Wheels" mark in advertising to this day*.  The plaintiff contends that, at least since November 16, 2015, the defendants have run ads appearing in Google searches for "BMF Wheels" that state "BMF Wheels is Now SOTA — sotaoffroad.com."  Plf.'s Supp. Br. [dkt. #236] at 7. Remarkably, the defendants admit that they have published the Google ads, but maintain that this is not "trademark use," and merely constitutes publication of a "statement of fact" advising customers that the company has changed to a new brand.  The defendants rely on the recent decision in *Kassa v. Detroit Metro Convention & Visitor Bureau*, No. 15-13153, 2015 WL 8007656 (E.D. Mich. Dec. 7, 2015), as justification.  That decision does not aid the defendants' position because,

as the court noted, the defendants' conduct is unlawful where they "'us[e] the challenged mark in a way that identifies the source of their goods.'"  *Kassa*, 2015 WL 8007656, at *3 (quoting *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 610 (6th Cir. 2009)).  In this case, the defendant's use of "BMF Wheels" in their Google ads clearly is intended to identify SOTA Offroad as the source of goods formerly sold under the prohibited brand.  In all events, whether this constitutes "use" of the mark or not, the continued — and apparently new and renewed — publication of advertising including the mark "BMF Wheels" plainly defies the injunctive command to "forthwith . . . withdraw all advertising in all media that bears the infringing marks or logos."

### 3. Disposition of Infringing Products

The main criticism of the court of appeals as to the scope of the original injunction was that it "overlook[ed] the scope of [the p]laintiff's registered mark," which the court identified as the letters "BMF," with "no specification as to style, font, size, or color."  *CFE Racing Products, Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 596 (6th Cir. 2015).  That decision, issued on July 13, 2015, essentially directed this Court to broaden the injunction substantially and prohibit the defendants from making any use of the "BMF" trademark.  The Court's amended judgment, correspondingly, commanded the defendants to "forthwith . . . dispose of, by sale or destruction, all existing stock of products bearing the infringing marks or logos."  The defendants apparently made no serious effort to do so until months after the injunction was entered.  Moreover, the record suggests a disturbing inconsistency between the representation by defendants' counsel on November 19, 2015 that the defendants had only 1,000 wheels on hand, and the fact that they somehow managed to sell or dispose of more than double that number since December 1, 2015.

-14-

At oral argument, the defendants attempted to justify their actions by professing confusion over the term "forthwith," insisting that they had asked for an explanation of that term at the November 19, 2015 hearing on their motion to "clarify" the injunction, and even suggesting that they had implored the Court to define the term more precisely at that hearing. The transcript of that proceeding, however, suggests nothing of the sort, instead disclosing that the defendants were well aware of the immediacy denoted by the amended judgment, which prompted their request to change the order to allow for a "transition period," which the Court did not allow.

The term "forthwith" denotes promptness and immediacy. According to *Black's Law Dictionary*, the ordinary meaning of "forthwith" is: "1. Immediately; without delay. 2. Directly; promptly; within a reasonable time under the circumstances; with all convenient dispatch." Black's Law Dictionary (10th ed. 2014). The Oxford English Dictionary concurs, assigning the meaning, "Immediately, at once, without delay or interval." No reasonable party in the defendants' position could have construed that term as allowing sales of infringing products to continue for more than four months after the entry of the judgment. The fatuity of the defendants' construction of the judgment is apparent from the fact that they did not begin in earnest to dispose of their remaining stock until more than a month after the judgment was entered; 60% of their inventory was sold or destroyed after November 1, 2015. Moreover, during the entire disposal process the defendants destroyed only 279 wheels — barely 6% of the total stock. And almost all of the wheels destroyed were disposed of in February 2016.

The defendants contend that the term "forthwith" in the amended judgment is not clear and definite and that their failure to sell or dispose of their inventory within any particular time frame therefore cannot subject them to contempt. The Court has heard this refrain from these defendants

-15-

before, when they advanced a similar argument that the Court's original judgment did not prohibit them from running magazine advertisements without the required disclaimer, because the original injunction did not state specifically that a disclaimer must be included in magazine ads. The argument is even weaker now, where the defendants were warned by this Court in its opinion granting the plaintiff's second motion for contempt that the defendants' choice to follow their own strained, self-serving interpretation of the language of this Court's judgment was one they made at their peril.

The Sixth Circuit has rejected claims that an injunction was too vague to support contempt proceedings where the "defendants [n]ever . . . claimed they were unclear or sought a clarification prior to institution of contempt proceedings." *Polo Fashions, Inc. v. Stock Buyers Int'l, Inc.*, 760 F.2d 698, 700 (6th Cir. 1985). "The defendants acted at their own risk by failing to seek the court's interpretation of the injunction if they had any good faith doubt as to its meaning." *Ibid.* And these defendants certainly knew how to seek clarification if they needed it. As noted earlier, the defendants filed a motion to "clarify" the injunction, asking the Court to allow them to "redirect" Internet traffic using their old "bmfwheels.com" domain. Contrary to their protestations at oral argument, they never sought any ruling from this Court to "clarify" the term "forthwith." Whether or not reasonable minds may have had some difference of opinion as to the scope of that term, the defendants never sought guidance from this Court to establish a more precise construction of it, and their own self-serving interpretation of the word sallied far beyond any plausible stretch of its meaning.

The defendants contend that the direction to "sell or destroy" their stock of merchandise implies a time allowance to achieve that directive. The plaintiff concedes the point, but contends

-16-

that anything beyond two weeks from the amended judgment date is unreasonable. Certainly, taking much longer does not square with the order to comply "immediately [and] without delay," as the term "forthwith" denotes. Without doubt, the disposition by sale of existing stock beyond one month after the amended judgment was entered is a plain violation of the Court's definite and specific order to dispose of the infringing product "forthwith." That window itself is generous and represents the outer boundary of any reasonable construction of the judgment's plain terms.

### 4. Sanctions

The defendants assert that they now have disposed of all infringing product, and they have ceased all conduct prohibited by the amended judgment. They contend, therefore, that no sanction for civil contempt is appropriate because there is no longer a need to coerce future compliance. They believe that any sanction other than a strictly prospective, *per diem* penalty would be "punitive" and inappropriate as a remedy for civil contempt. The Court does not agree.

"The district court has inherent authority to fashion the remedy for contumacious conduct." *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 557 (6th Cir. 2006). "'[C]ivil contempt may be either intended to coerce future compliance with a court's order, or to compensate for the injuries resulting from the noncompliance.'" *Gnesys, Inc. v. Greene*, 437 F.3d 482, 493 (6th Cir. 2005) (quoting *Glover v. Johnson*, 199 F.3d 310, 313 (6th Cir. 1999)). "[I]t has been repeatedly [held] that, in a proceeding for civil contempt for disobedience to an injunction granted in an infringement suit, the profits derived from the violation of the injunction are recoverable." *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 457 (1932) (holding that an award of net profits derived from defendant's infringing sales was an appropriate sanction for contempt without regard to whether the plaintiff had established actual damages due to those post-injunction sales).

-17-

"[D]isgorgement of profits is a traditional trademark remedy and the [] use of profits as a measure for the contempt sanction is hardly a novel proposition." *Jerry's Famous Deli, Inc. v. Papanicolaou*, 383 F.3d 998, 1004 (9th Cir. 2004) (citing *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 514 (9th Cir. 1985)).  "[W]ilfulness is not an element of civil contempt, but the state of mind of the contemnor is relevant [] in the consideration of sanctions."  *Gnesys*, 437 F.3d at 493 (citing *Rogers v. Webster*, 776 F.2d 607, 612 (6th Cir. 1985)).

The judgment of this Court, entered in conformance with the opinion and judgment of the court of appeals, plainly prohibits all of the conduct discussed above.  Morever, the prohibited conduct in which the defendants repeatedly have engaged clearly was intended by them to further their desire to continue doing exactly what the judgment forbids: selling infringing products to the public, profiting from those sales, and increasing those profits by the use of trademarks, logos, and advertising that invade the plaintiff's rights.  Since October 1, 2015, the defendants evidently regarded the Court's judgment as a mere suggestion rather than a mandate.  And they have profited handsomely from that disregard, to the tune of more than $800,000 in revenue.

Although the defendants no doubt entertained the sincere belief at the beginning of this case that they could persist in using their BMF brand coexisting with the plaintiff, the jury's verdict should have disabused them of the notion that they could continue doing business with that mark. A brand change was in order, and the Court's initial injunction was intended to nudge them in that direction.  Instead, the defendants decided to push the envelope and were twice found in contempt for continuing to use the BMF Wheels mark in ways that plainly violated the definite and specific orders of the Court.  And if any doubt remained as to their ability to hold onto the BMF mark in some form, the decision by the court of appeals on July 13, 2015 should have quashed that notion.

-18-

It is instructive to view the defendants' most recent conduct in the context of the entire case, which has been pending for nearly five years.  The complaint was filed in August 26, 2011.  The Court referred the parties to mediation in July 2012.  The Court denied the defendants' motion for partial summary judgment in January 2013.  The case proceeded to trial before a jury and a verdict was returned on June 6, 2013.  The Court entered its original judgment on February 24, 2014, and its injunctive terms allowed the defendants until September 30, 2014 to transition to a new brand.  The court of appeals entered its judgment on July 13, 2015 — more than two years after the jury rendered a verdict in the plaintiff's favor — remanding with instructions to modify the injunction to prohibit the defendants from using the infringing mark in any respect.  And the Court entered its amended judgment on October 1, 2015.  The Court again referred the parties to mediation, in a second attempt to encourage them to reach a compromise that would allow the orderly disposition of their respective commercial interests.  It has been just over two years since the original judgment was entered requiring the defendants to abandon their pre-judgment brand and logos.  The defendants could have begun the process of developing and adopting a new, non-infringing brand at any point since the jury found that the defendants' BMF Wheels logos had infringed CFE's registered and unregistered trademarks.  In fact, they asserted at one point that they needed but ninety days to develop a new logo and retool.  Instead, they continued to use the mark in ways that were prohibited by the orders and judgments of this Court.

As noted above, permitting the defendants to sell or destroy infringing product for thirty days after the judgment commanded them to do so "forthwith" is a generous allowance.  Revenue realized from all sales of infringing products after that date plainly is money earned from contumacious conduct.  Based on the figures in the plaintiff's supplemental brief, which the defendants have not

disputed, the gross revenue derived from the sales of wheels bearing infringing marks during that period comes to a bit more than $375,000.  As noted above, disgorgement of profits is appropriate as a sanction for contempt in cases where a defendant defies an injunction and continues to sell infringing products.  *Leman*, 284 U.S. at 457; *Jerry's Famous Deli*, 383 F.3d at 1004.  The sanction particularly is appropriate here, where the contemptuous conduct brazenly was directed at maximizing the amount of profit that could be obtained from the infringement.   Here, the defendants' "net profits" from all sales after November 1, 2015 equal the full amount of the gross revenue received from those sales. The defendants should have destroyed those wheels that they subsequently sold, and their net profit on those infringing goods should have been zero, or a net loss equal to the cost of production.  By selling them instead, the defendants realized actual profits of $375,000 that they had no right to receive by selling those goods.

The defendants assert that today, at last, they no longer have any infringing products left to sell.  But they admit that they continue to use the infringing mark in advertising.  It is apparent from the record that the previous sanctions of $500 and $750 per day did little to encourage the defendants' compliance with the judgments of this Court.  Because more persuasive force is needed, a *per diem* sanction of $7,000 is imposed from the date of this order for each day the defendants continue using the BMF mark in *any* way.  That amount accounts for the fact that the defendants received nearly $6,400 in gross revenue every day that they defied the injunction from October 1, 2015 through February 10, 2016.

### C.  Attorney's Fees

The court of appeals remand order included the direction to address the plaintiff's attorney's fee request as authorized by the Michigan Consumer Protection Act, Mich. Comp. Laws §

-20-

445.911(2). *CFE Racing Products*, 793 F.3d at 598. After the Court entered the amended judgment, the plaintiff filed a timely motion for attorney's fees under Federal Rule of Civil Procedure 54(d) seeking $366,301.49 in attorney fees, costs of $9,920.19 not previously taxed, and $2,099.80 in costs taxed in the court of appeals for a total amount of $378,321.48.

"In setting an award of attorneys' fees, the district court must first arrive at the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1193 (6th Cir. 1997) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "The court should then exclude excessive, redundant, or otherwise unnecessary hours." *Ibid.* "Next, the resulting sum should be adjusted to reflect the 'result obtained.'" *Ibid.* "This involves the following of two questions: 'First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?'" *Ibid.*

The Sixth Circuit directed this Court to consider the factors set forth in *Smolen v. Dahlmann Apartments, Ltd.*, 186 Mich. App. 292, 463 N.W.2d 261 (1990), when assessing a reasonable fee to be awarded to the plaintiff under the MCPA. *CFE Racing Products*, 793 F.3d at 598. "There is no precise formula for computing the reasonableness of an attorney's fee. However, among the facts to be taken into consideration in determining the reasonableness of a fee include, but are not limited to, the following: (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client."

*Smolen*, 186 Mich. App. at 295-96, 463 N.W.2d at 263 (quoting *Crawley v. Schick*, 48 Mich. App. 728, 737, 211 N.W.2d 217, 222 (1973)).

As an initial matter, the defendants argue that the plaintiff is not entitled to attorney fees under the MCPA. That argument is frivolous, because the issue already has been addressed and decided by the court of appeals. *CFE Racing Products*, 793 F.3d at 598 (directing that "[o]n remand, the court should award reasonable attorneys' fees in accordance with Michigan law"). The Sixth Circuit's ruling is the law of the case and it may not be revisited by this Court at this late date. *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997) ("The 'law of the case' doctrine precludes a court from reconsideration of identical issues. Issues decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case." (quotation marks and citations omitted)).

1. Hourly Rate

The plaintiff seeks to recover an aggregate amount of $366,301.49 for a total of 1,795.5 hours billed by its attorneys at various hourly rates. The plaintiff submitted itemized billing records indicating billings by the primary attorneys who worked on the case that are summarized as follows:

- Stephen Susser. Partner. 22-25 years experience. $400 per hour. 204.3 hours. $81,720 in attorney fees. Ex. 2, Billing Records at 91-101.
- Brian Brown. Partner. 8-13 years experience. $250-275 per hour. 570.6 hours. $98,187.50 This billing represents a total of $142,555 minus $44,367.50 for work related to preliminary injunctive relief under the Lanham Act and contempt proceedings. Ex. 2, 8-41.
- John Carlson. Partner. 17-22 years experience in intellectual property. $360 per hour. 337.6 hours. $99,634. Total billing of $121,342 minus $21,708 for work related to obtaining and enforcing injunctive relief. Ex. 2, 47-62.
- Steven Sequin. Associate. Admitted 2014. $160 per hour as an attorney and $100 per hour while employed as a law clerk prior to admission. 604.6 hours. $69,962. Total billing of $88,946 minus $14,984 for work unrelated to MCPA claims. Ex. 2, 73-90.

-22-

The plaintiff also seeks to recover fees billed by four other attorneys employed by the firm for minor amounts of work done on the case:

- Benjamin Coon. Partner. 4-6 years experience. $210-230 per hour. 52.5 hours. $11,292 (excluding work on a motion for preliminary injunction that was not filed). Ex. 2, 42-25.
- Karin Butchko. Partner. 11-13 years experience. $250-275 per hour. 19.8 hours. $5,672.50 (excluding $2,013.50 for work unrelated to the MCPA claims). Ex. 2, 65-67.
- Quincy Harrison. Associate. 1-2 years experience. $130 per hour. 2.5 hours. $325.
- David Wisz. Partner. 13 years IP experience. $300 per hour. 2.1 hours. $630.
- Donna Heiser. Of Counsel. 19 years experience. $250 per hour. 1.5 hours. $375.

Finally, the plaintiff seeks to recover $2,580 in fees attributed to 25.8 hours of work by various paralegals and law clerks at a rate of $100 per hour.

The plaintiff asserts that it is not seeking to recover $88,688 in fees and costs that were unrelated to the MCPA claim, and entries relating to those fees and costs were redacted from the billing records that were submitted. In addition, the plaintiff's attorneys assert that they do not seek to recover $29,287.82 in fees for services rendered that, by an agreement between the plaintiff and its attorneys, were not billed to the client, in order to "cap" the amount of attorney fees at issue for the purposes of settlement negotiations with the defendants.

The hourly rates billed by each of the plaintiff's attorneys are reasonable for an intellectual property type of practice and their years of experience. The rates charged by all but two of the plaintiff's attorneys range from $130 to $300 per hour. The level of experience of those attorneys ranges from newly admitted or with 1-2 years experience to nearly 20 years in intellectual property litigation, and the rates vary proportionally to that experience from 38% to 87% of the $342 mean hourly rate charged by intellectual property attorneys in the State of Michigan, according to the 2014 Economics of Law Practice Attorney Income and Billing Rate Summary Report published by the State Bar of Michigan. Ex. 3 at 6. District courts in this district previously have approved hourly

-23-

rates up to and beyond $300 per hour for Michigan attorneys in trademark infringement cases. *Mike Vaughn Custom Sports, Inc. v. Piku*, No. 12-13083, 2015 WL 4603171, at *6 (E.D. Mich. July 30, 2015) ("[T]he [hourly rates ranging from $275 to $370] can be justified by reference to the prevailing market rates in the community.") (adopting a "blended rate" of $302 per hour); *Falcon Waterfree Techs., LLC v. Janssen*, No. 05-551, 2011 WL 1231164, at *3 (W.D. Mich. Apr. 1, 2011) (approving a "blended rate" of $300 per hour for work done by a senior partner, partner, and associate).

The hourly rates charged by attorneys Stephen Susser ($400 per hour) and John Carlson ($360 per hour) are higher than the mean for all attorneys in intellectual property practice, but lower than the 75th percentile of $425 per hour. But those rates are reasonable considering the field of practice and their years of experience. The mean hourly rate for all attorneys in the State of Michigan is $265 per hour. Compared with that baseline rate, the premium for intellectual property practice is 29% ($342 vs. $265). *See* SBM Economics of Law Practice Report at 4, 6. Adjusting for their years of experience, the mean hourly rate for an intellectual property partner with 16-25 years of experience should be $375 ($291 multiplied by a premium of 1.29). *See Id.* at 4. By that measure, Mr. Carlson's hourly rate of $360 is below average. Mr. Susser's rate, although moderately higher than average, is well below the implied 75th percentile rate of $451. *Ibid.*

## 2. Time Expended and Charged

The defendants do not challenge the amount of work attributed to any specific line items in the plaintiff's attorneys billing records, other than generally arguing, with little elaboration and few specific citations, that the itemized entries are "vague" or "duplicative," and that the plaintiff's attorneys did not "apportion" their work separately to the MCPA and Lanham Act claims.

-24-

The hours of work claimed here are reasonable given the scope of the litigation in this case, which now has been pending for nearly five years. The record of proceedings demonstrates that the nearly 1,800 hours billed by the plaintiff's attorneys fully were justified by the effort required to bring the litigation, trial, and cross-appeals to an ultimate conclusion in the plaintiff's favor in the face of considerable resistance from the defendants. The litigation of this case has spanned nearly five years since it began in 2011, and the defendants fairly could be regarded as having waged a "scorched earth defense" at every stage of the case.

The complaint was filed on August 26, 2011. The defendants filed an answer and amended answer asserting counter-claims for declaratory relief regarding the validity of their and the plaintiff's trademark registrations. They filed a motion for partial summary judgment on July 23, 2012, challenging all of the claims in the amended complaint. The Court granted that motion in part and dismissed the claims for trademark dilution and cyberpiracy, but allowed the plaintiff's primary claims under the Lanham Act and MCPA to proceed to trial. The defendants filed six motions *in limine*, which the Court denied because the defendants made no reasonable attempt to seek concurrence in the relief requested from the attorney for the plaintiff. The defendants subsequently re-filed two of those motions, which the Court denied without prejudice, permitting the defendants to raise contemporaneous objections at trial to the challenged items. The defendants also filed a pretrial motion asserting that the case should be tried to the Court and not a jury. That motion was denied. The Court also denied the plaintiff's eleventh-hour contested motion to adjourn the trial for the purpose of conducting further discovery on damages.

On June 4, 2013, the case proceeded to a three-day trial before a jury on the plaintiff's trademark infringement claims under the Lanham Act and the MCPA. On June 6, 2013, the jury

returned a verdict in favor of the plaintiff, finding that the defendants had infringed the plaintiff's registered and unregistered trademarks by the use of their "BMF Wheels" trademark and the various exemplar logos submitted as part of the verdict form. Before the case was submitted to the jury, the Court granted in part the defendants' mid-trial motion for judgment as a matter of law and dismissed the plaintiff's claims for disgorgement of profits. At trial, the plaintiff presented three witnesses who testified for slightly more than four hours. The defendants presented one witness (defendant Brock Weld), who testified for one hour. The plaintiffs offered 58 exhibits into evidence, and the defendants offered 16. The parties presented opening and closing arguments that altogether occupied 2-½ hours.

The defendants filed a "renewed" post-trial motion for judgment as a matter of law on the plaintiff's MCPA claims. The Court summarily denied that motion because the defendants waived any challenge to the MCPA claims by stipulating at the close of trial that a verdict for the plaintiff under the Lanham Act would render them equally liable under the MCPA. The plaintiff filed a post-trial motion seeking an injunction and cancellation of the defendants' trademark registration. Notwithstanding the jury's verdict, the defendants vigorously opposed that motion, contending that no injunctive relief was warranted and that their registration should not be cancelled. On February 24, 2014, the Court entered judgment in favor of the plaintiff imposing a narrow injunction that allowed the defendants to continue using their mark in a limited way to sell wheels but no other product, subject to modification and approval by the Court, prohibiting them from using any of their existing logo designs, and requiring the use of a disclaimer alongside all public uses of the mark.

After entry of the original judgment, the defendants filed a motion to approve a proposed new logo, a motion for a new trial under Rule 59, and a motion to stay the injunction pending

-26-

appeal. The court denied all of those motions in an opinion and order entered on April 17, 2014. They also filed a motion to "clarify" the injunction, seeking to continue the use of several variations of the marks that the Court found to be infringing and not permitted. The Court denied the motion to clarify the injunction on June 20, 2014.

The defendants vigorously contested the plaintiff's two post-judgment motions for contempt. The Court granted in part both of those motions, twice held the defendants in contempt, and both times imposed sanctions to compel the defendants' compliance with the injunction. The Court previously awarded the plaintiff its attorney fees relating to both of those motions, and the plaintiff does not seek to recover fees related to those proceedings in its present motion.

The defendants appealed the judgment and the Court's rulings denying their motions for post-trial judgment as a matter of law and a new trial. They later added to their appeal challenges to the Court's post-judgment orders finding them in contempt and imposing sanctions. All of their challenges were denied on appeal.

The defendants contend that the issues presented in the case were few and simple, and that the plaintiff's attorneys are attempting to recover for billable hours far out of proportion to the work required. That position is belied by the record of the proceedings, which is extensive, and by the defendants' prodigious, continuous, and often quixotic efforts to resist the plaintiff's claims as well as the imposition, enforcement, and consequences of the jury's verdict and the Court's judgments entered in accordance with it.

The defendants have not made any substantial showing that the work billed by the plaintiff's attorneys was disproportionate to the effort needed to overcome their resistance to the result obtained, and there is no evidence in any of the detailed billing records of hourly billings that are

-27-

out of line with the work involved in the cited proceedings. Moreover, the plaintiff's attorneys systematically have excluded time billed to matters such as their motion for preliminary injunction that never was filed, claims that they did not pursue or on which they did not prevail, and matters such as the post-trial motions for contempt for which they already were awarded their fees.

### a. Excessive, Redundant, or Unnecessary Hours

The defendants do not point to any particular billings as representing patently excessive or redundant work. Instead, they challenge the plaintiff's claim for fees generally on the basis that the plaintiff's attorneys made no attempt to "apportion" fees as between the Lanham Act and MCPA claims. They contend that the plaintiff has not shown that the work done on the entire case was proportional to that required by the litigation of the MCPA claims. As noted above in regard to the scope of work, none of the itemized billings submitted by the plaintiffs suggest that the hours claimed were excessive, unnecessary, or redundant in the context of the proceedings to which each entry related.

### b. Apportionment Among Unrelated Claims

The plaintiff's attorneys excluded various billings that were unrelated to their trademark infringement claims or that related to aborted proceedings or matters that they did not pursue. Nothing in the billing records suggests that they are seeking compensation for work that was not related to the MCPA claims. The defendants' primary argument in opposing the attorney fee motion is that the plaintiff's attorneys made no attempt to apportion their fees between work done on the MCPA claims and work related to the Lanham Act claims. But that argument is foreclosed where the defendants themselves, from the start of the proceedings in this case, have at every step of the litigation, trial, and appeal, treated the claims as being one and the same.

-28-

In order to prove a claim for unfair competition or trademark infringement under the Lanham Act, the plaintiff must show a likelihood of confusion. *Frisch's Restaurants Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 647 (6th Cir. 1982). Likewise, the Michigan Consumer Protection Act prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce," which the Act defines as including "*[c]ausing a probability of confusion or misunderstanding* as to the source, sponsorship, approval, or certification of goods or services." Mich. Comp. Laws § 445.903(1) (emphasis added). "In order to make a finding as to the likelihood of confusion, the Court must consider eight factors in determining whether a finding of likelihood of confusion is permissible." *CFE Racing Products*, 793 F.3d at 592 (citing *Frisch*, 759 F.2d at 1264). "These factors include: (1) strength of the plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; (8) likelihood of expansion of the product lines." *Ibid.*

In its ruling on the parties' cross-appeals, the Sixth Circuit affirmed the jury's verdict on both the Lanham Act and MCPA claims. As the court of appeals noted, "[t]he parties agree that the 'likelihood of confusion' finding by the jury controls Defendants' liability under the MCPA." *Id.* at 597. Also, in their motion for partial summary judgment, the defendants treated the Lanham Act and MCPA claims as one.

Moreover, the defendants stipulated at the close of the trial that liability on the Lanham Act claims would be coextensive with liability on the MCPA claims:

> THE COURT:    Very well. So if there is a finding on the — on either of the Federal claims, then that will automatically result in a judgment on the State claims, as well, is that a fair characterization?

| | |
|---|---|
| MR. CANTOR: | That's correct, your Honor. |
| THE COURT: | All right. |
| MR. BROWN: | And on the State law claims, under — and common law unfair competition and MC — the Michigan Consumer Protection Act claim, and damages, as well, the damages that would be applied on the verdict form would also be applied under — |
| THE COURT: | Well, you don't get them twice. |
| MR. BROWN: | We don't get them twice, right. |
| MR. CANTOR: | I agree. Look, at the end of the day, if they find that we infringe either one, those State — the State Michigan Protection Act and the common law claims would be subsumed in those, as well. |
| THE COURT: | Yes. |
| MR. CANTOR: | And the damage award would also be deemed to apply to those. |

Trial Tr. at 5 (June 6, 2013) [dkt. #109]. Because the work done on the Lanham Act claims was identical to the work on the MCPA claim, as everyone agreed, there is no need to engage in the artifice of attempting to distinguish the indistinguishable.

### 3. Other Factors Under *Smolen*

#### a. Standing and Experience of Counsel

As noted above, the plaintiff's attorneys are highly experienced in their field. The two principal attorneys on the case, Stephen Susser and John Carlson, are partners in their law firm with more than two decades of experience. Their hourly rates are proportional and reasonable to the nature of their practice and their years of experience. The billing rates sought by the other attorneys in the case likewise are proportional to their experience, and in fact they are lower than the average rates of compensation received by their peers of similar stature.

#### b. Level of Success and Results Achieved

The efforts of the plaintiff's attorneys resulted in an excellent outcome for their client and, ultimately, in a judgment in its favor on all points. The jury did not award the plaintiff any monetary

-30-

damages, but the amended judgment granted to the plaintiff the full extent of the injunctive relief that it has sought from the outset of the case: an end to the defendants' use of their infringing marks and the cancellation of their conflicting trademark registration.

### c. Skill, Time, and Labor Involved

As discussed above, the labor required to bring this case to a conclusion was extensive. The defendants' resistance to the ultimate outcome has been unwavering, and the work needed to overcome it has been prodigious.

### d. Difficulty of the Case

This case was difficult, in large measure due to the defendants' continued resistance to the commands to separate themselves from the general use of the BMF mark. As noted above, that resistance continued even through the date of the oral argument on the current motions.

### e. Expenses Incurred

The costs of $9,920.19 for trial proceedings not previously taxed and $2,099.80 for the proceedings on appeal are modest in the context of the overall work that reasonably was needed to bring this case to a resolution. The defendants do not raise any particularized challenges to the reasonableness of any of the billed costs or expenses.

### f. Professional Relationship

The plaintiff's attorneys have represented their client from the start of the record proceedings in this case in August 2011 to the present. The attorney-client relationship has been continuous, and throughout their nearly five-year tenure as counsel of record the plaintiff's attorneys vigorously and professionally have pursued the interests of their client. That tenacity and dedication amply justifies the substantial fees that they now seek for their services.

* * * * * * * * * * * * *

The attorney's fees and costs requested are reasonable and appropriate. The plaintiff is entitled under the MCPA to recover attorney fees of $366,301.49, costs of $9,920.19 not previously taxed, and $2,099.80 in costs taxed in the court of appeals, for a total amount of $378,321.48.

### III.

The Court finds no merit in the defendants' motion to "clarify" the amended judgment. That judgement is clear, specific, and unambiguous. Nor is there any basis to modify the amended judgment to allow the defendants to engage in the prohibited conduct as they requested. The defendants have disobeyed the injunctive provisions of the amended judgment, and their conduct amounts to a willful violation of the clear and unambiguous provisions of the injunctive terms of that judgment. The plaintiff has established its entitlement to the attorney's fees and costs claimed.

Accordingly, it is **ORDERED** that the plaintiff's fifth motion for contempt [dkt. #205] is **GRANTED**, and the defendants are in civil contempt of the amended judgment.

It is further **ORDERED** that the defendants shall pay to the plaintiff forthwith sanctions in the amount of $375,000 as sanctions for their past contumacious conduct and as compensation to the plaintiff therefor, plus a fine of $7,000 per day for each day after April 26, 2016 that the defendants use any trademark or logo that includes the letters "BMF" in any form, including but without limitation, in any advertising, product display, sale, or promotion, and in any website, domain name, or social media, until full compliance with the terms of the Court's October 1, 2015 amended judgment and this order is achieved. No separate judgment will enter for the contempt determination.

It is further **ORDERED** that the plaintiff's motion for attorney's fees and costs under the Michigan Consumer Protection Act [dkt. #210] is **GRANTED**, and the plaintiff shall recover from the defendants attorney's fees and costs in the amount of $378,321.48.  An amended judgment will enter for the attorney's fees and costs award.

It is further **ORDERED** that the defendants' emergency motion to clarify the injunction [dkt. #208] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   April 26, 2016

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 26, 2016.

s/Susan Pinkowski
SUSAN PINKOWSKI

---